## SAM STEWARD V. THE STATE.

No. 21754. Delivered November 12, 1941.
Rehearing Denied January 7, 1942.
Appellant's Request for Leave to File Second Motion for
Rehearing Denied (Without Written Opinion)
January 28, 1942.

The opinion states the case.

*Florence, Florence, & Meredith,* of Gilmer, *Andrew J. Mcmaster,* of Dallas, and *C. G. Engledow,* of Pittsburg, for appelland.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Murder is the offense; the punishment, fifty years' confinement in the State penitentiary.

That appellant's two sons, Lorenzo, age twenty-four, and Odell, age eighteen, by their joint, as well as several, attack, killed the deceased, Ollie Smith, without justification or excuse, is not seriously disputed. Appellant's guilty connection therewith is made to depend upon an application of the law of principals as submitted by the trial court, and particularly that set forth in Art. 65, P. C., which makes one a principal to the commission of an offense by another who, being present and knowing the unlawful intent, aids by acts or encourages by words or gestures another in the commission of the offense; and the other, as set forth in Art. 69, P. C., which makes one a principal who advises or agrees to the commission of an offense by another and who is present when the offense is committed.

The sufficiency of the evidence to support appellant's conviction is challenged, rendering it necessary to state the facts at some length.

On the day of the homicide, several parties were assembled at the cemetery in the West Chapel Community to attend the funeral of a neighbor. Among those present were the appellant, the deceased, Preacher Isaac, and "Big Nigger." While awaiting arrival of the funeral party, it was suggested, by one of those present, that they get some whiskey. Appellant agreed to sell them some. Accordingly, all of said parties, together with others, went to appellant's home, about two miles away, in deceased's car, with deceased driving. There appellant sold them a pint of whiskey, which was drunk there on the premises. Appellant offered to sell them another bottle, when deceased made it known that he would not permit anyone to ride in his

car with whiskey on his person or in his possession. Appellant then hid the bottle of whiskey by the side of the road. While deceased was not looking, Preacher Isaac picked up the bottle and put it in his pocket. All parties then prepared to go back to the cemetery, and most of them were in the car when deceased decided to search appellant to see if he had any whiskey on him; and, about that time, he saw the bottle in Preacher's pocket. This he seized and broke. Appellant cursed deceased and told him he would have to pay for it. Appellant drew his knife and a difficulty between them was prevented by the prompt interference of those present. It was this incident, the State contended, which formed the background for the subsequent killing. All of the parties, except appellant and Preacher, who remained at appellant's home, then returned to the cemetery.

After a time, appellant's two sons appeared and told appellant that the funeral was over. Appellant told them that the deceased had treated him "shabby," and one of the boys told him that they had heard all about it, and for him not to mention it, but to let it go. Thereafter appellant, his two sons, and Preacher met up with the witness Richardson, who was going to the town of Pittsburg, and got into the car to go with him. There was evidence to show that, on the way to town, both appellant and Lorenzo tried to borrow a gun, but without success, and that, in the conversation, appellant said: that a boy took a pint of whiskey off of him; that he (appellant) was going to get his money for the whiskey; and that the boy was in Pittsburg. Upon reaching Pittsburg, Lorenzo made inquiry if deceased had beeen seen. While riding down one of the principal streets of Pittsburg, Lorenzo saw deceased approaching in his car. He told Richardson to stop the car; that there was a boy he wanted to see. Richardson sounded his horn and brought his car to a stop near that of deceased's. When he did so, the two boys, Lorenzo and Odell, got out and went to deceased's car, approaching it from a side. Appellant got out of the Richardson car and approached deceased's car from the other side. Deceased had not brought his car to a full stop; it was still moving. Some of the witnesses say that, as appellant reached the deceased's car, he removed the key from the switch, while others say that he did not remove the key until the deceased started to move on. At any and all events, the undisputed evidence shows that Lorenzo and Odell, upon reaching the car, stabbed the deceased to death while he was seated behind the steering wheel of his car. Three wounds penetrated the heart. Lorenzo used what is known as an "East Dallas Spe-

cial," knife with a four-inch blade, while Odell used a "Scout Knife," with a two and one-half inch blade.

Appellant, testifying as a witness in his own behalf, admitted the transaction as testified to by the witnesses relative the sale of the whiskey. He denied the existence of any fact which would connect him as a principal to the killing. He justified his presence at the car at the time of the killing by saying that he was endeavoring to keep down any trouble between his sons and deceased.

It is the province of the jury to settle disputed issues of fact. The State's testimony was sufficient to warrant the jury's conclusion of guilt.

Appellant reserved an exception to that part of the charge on principals wherein the jury were authorized to take into consideration any words used by the appellant to encourage his sons, or either of them, in the commission of the crime, insisting that there was no evidence to authorize such charge, in that the evidence did not reflect that appellant said anything or spoke any word, at the time of, or prior to, the killing. In this connection, we note that, upon his direct examination, appellant testified:

"Yes sir, I got out of the car then. Well, it looked like they were fighting there and I said what are you boys doing, or something like that, and I started up there to get to the boys. I was going to see what the trouble was. I was going to try to stop the racket when I got to them."

It thus appears that appellant did speak to his sons and did utter some words to them just prior to the killing. This authorized the trial court to submit this phase of the law of principals.

Several bills of exception present the same question. It appears that appellant wanted to introduce as a witness his son, Odell, who was then under indictment for the same offense, and desired to have the witness called to the stand. The State, anticipating such action on appellant's part, sought to prevent same. The trial court refused to permit the calling of the witness. In this the trial court was correct because, under the provisions of Art. 711, C. C. P., the witness, being a co-indictee, was not competent to testify in the case. Nor was the appel-

lant authorized to place before the jury the fact that he desired to have the witness testify. O'Neal v. State, 5 S. W. (2d) 521, 109 Tex. Cr. R. 486.

Several objections and exceptions were reserved to the charge here presented. These have been examined and are over-ruled without discussion. The charge as a whole correctly presented the law applicable to the case and presented every affirmative defense theory.

The judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In his motion for rehearing appellant vigorously attacks the charge of the court and the original opinion of this court sustaining it. Because of the unnecessary length, the many repetitions and incomplete sentences in the charge there appears some justification for the criticism lodged against it and we have been caused to lend a sympathetic ear to the motion and to the things directed against the charge. The fifteen pages embraced within the charge, most of which deal with the law of murder and the law of principals and its application to the facts of the case, are, of necessity, tedious presentations and difficult to understand, but we cannot agree that it is positively confusing or misleading.

We are not in position to appreciate the charge presented in the motion lodged at the original opinion in this case to the effect that the courts more lightly regard one's liberty than formerly or that this opinion so indicates. Neither are we able to understand and appreciate the direct charge that this opinion holds that the courts "may assume the corpus delicti," and we believe if counsel had given more deliberate consideration to his record and less enthusiasm to his expressions in the motion, that the motion itself may not have been subject to the same criticism which he lodges against the court's charge.

The most serious complaint set out in the motion for re-

hearing is found in the third ground thereof and is to the effect that the court did not charge on the law applicable to murder without malice. We do not think it has been held that it is essential always to present an abstract definition of the law where it has been properly applied to the facts of the case, though it is always a safe and more acceptable practice to do so. In the case before us the court has succeeded in applying the law of murder without malice to the facts of the case and this we think under the circumstances of the instant case will suffice to present the matter to the jury. In his exceptions to the court's charge it is set out that the court did not "clearly" apply the law to the facts of the case, but nowhere do we find a complaint because the court did not formally and abstractly define murder without malice. Having overlooked the opportunity to complain at the proper time, appellant is not in position to ask this court to hear him now.

Again, in the motion for rehearing appellant complains that the court did not give a charge on circumstantial evidence, evidently overlooking paragraph 19 of the court's charge which appears to be in a form long accepted as a proper charge on circumstantial evidence.

We are unable to agree that the record in this case will sustain any of the other complaints found in the motion for rehearing and, accordingly, the same is in all respects overruled.